IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSALYN L. OLIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 0370 |
| v. | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| BOARD OF EDUCATION OF | ) | |
| THE CITY OF CHICAGO, | ) | Magistrate Judge Keys |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant Board of Education of the City of Chicago ("Board"), by its attorneys, pursuant to Rule 50, Fed. R. Civ. P., hereby moves for judgment as a matter of law for the reasons set forth in the Memorandum of Law below.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Plaintiff brought this suit against the Board of Education of the City of Chicago alleging that she was discriminated against by the Board, on the basis of her disability, in violation of the ADA of 1990, 42 U.S.C. § 12111, *et seq.* (Complaint at Count I, ¶¶1, 57). Plaintiff also claims ADA retaliation, and ADA interference, coercion and/or intimidation. (Complaint at Count II, ¶¶1, 59; and Complaint at Count III, ¶¶ 1, 61). For the reasons discussed below, Defendant is entitled to entry of judgment as a matter of law with respect to Plaintiff's ADA claims.

**II.   ARGUMENT**

    **A.    The Standard of Review**

A motion for judgment as a matter of law should be granted "if reasonable minds could not come to a conclusion other than one in favor of the movant." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993); see also, *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 537-

38 (6th Cir. 2003). In ruling on such a motion, the Court is only to give the non-movant "the benefit of all reasonable inferences." *Phelps*, 986 F.2d at 1023; *Gray v. Toshiba America Consumer Products, Inc.*, 263 F.3d 595, 598 (6th Cir. 2003) (the Rule 50 "motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party"). Furthermore, although the Court does not weigh the evidence on a motion for judgment as a matter of law, a mere scintilla of evidence will not suffice to defeat the motion. *Simpson v. Midland-Ross Corporation*, 823 F.2d 937, 944 (6th Cir. 1987); *Wilkins v. Eaton Corporation*, 790 F.2d 515, 522 (6th Cir. 1986). As the Sixth Circuit noted in *Chappell v. GTE Products Corporation*, 803 F.2d 261, 265 (6th Cir. 1986), in affirming judgment as a matter of law for the employer in an ADEA case, with the standard being applicable to the ADA: "Jury control devices such as judgment N.O.V. or directed verdict have been recognized by courts as applicable in certain age discrimination cases due to the possibility that sympathy for the plaintiff may present an overriding but impermissible factor in a jury verdict for plaintiff." 803 F.2d at 265.

### B. Defendant Is Entitled To Judgment As A Matter Of Law On Plaintiff's Disability Discrimination Claims

The ADA provides that a covered employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Plaintiff has the burden to establish that she is "disabled" and "qualified" and entitled to protection under the ADA. *Byrne v. Bd. of Ed. School of West Allis*, 979 F.2d 560, 563 (7th Cir. 1992). Two distinct categories of disability discrimination exist under the ADA: disparate

treatment and failure to accommodate. In the present case, plaintiff did not establish a claim under either analysis.

1. **Plaintiff Cannot Perform The Essential Functions Of The Job With Or Without A Reasonable Accommodation.**

An essential function is a fundamental job duty required of a person in the job the plaintiff holds or desires; a marginal duty is not an essential function. *See* 29 C.F.R. § 1630.2(n)(1) (2007). Classroom teachers for the Chicago Public Schools "shall be responsible for the instruction, progress, and discipline of their classes"; and these responsibilities include instructional planning, instructional methods, competency in subject matter taught, classroom management and teacher-pupil relationships. Jose Barillas' testimony established that there are appropriate and inappropriate methods of maintaining discipline, and that it is up to each teacher to use appropriate techniques to control her class. As the Board's job description for classroom teachers contains both classroom management and student discipline as job duties, teachers are required to perform these functions daily.

Plaintiff testified that due to past medical problems, she suffered from vocal cord problems which made it difficult for her to yell and scream at her students, which was Plaintiff's method of disciplining her class. Michael Rowder, the Board's ADA administrator, testified that she investigated Plaintiff's request for a reasonable accommodation, and finding that Plaintiff's disability was one that could be reasonably accommodated, purchased a voice amplification system designed to allow Plaintiff to project her voice without strain. Jose Barillas, principal of Marshall Middle School, also testified that he made adjustments to Plaintiff's schedule, even to the point of adding to the workload of other teachers, in an attempt to give Plaintiff more rest periods and less strenuous class assignments.

Plaintiff, unsatisfied with the expense and effort from the Board and Barillas to reasonably accommodate her, demanded as an additional accommodation, a paid parent helper, to assist with classroom management and discipline. Plaintiff admitted that classroom management was a problem for her, and that she was unable to maintain student discipline. Barillas offered her suggestions on how to engage the students in the group guidance class, which would limit the amount of time she would be speaking in class. Plaintiff stated that the reason for requesting a paid parent helper was that there would be someone else in the room to watch students. Plaintiff also testified that her classes were better behaved when someone else was in the room, like a guest speaker.

On November 20, 2001, Barillas denied the request, informing Plaintiff that the discipline problems were a result of poor instructional planning, including playing the same video tapes repeatedly to students. Barillas recommended that Plaintiff improve her classroom management by modifying her lesson plans to engage the students in the lessons. Barillas noted classroom management and discipline as weaknesses on plaintiff's teacher evaluations for the school years 1997-1998 through 2000-2001. Classroom management, which includes student discipline, is an essential function of a classroom teacher's position, as Barillas testified.

### a) The Board's accommodations were reasonable

Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits that it will produce.

A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change of essential job functions, assignment of essential job functions to other employees, or lower productivity

4

standards. *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373-374 (7th Cir.2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 601-602 (7th Cir. 1998).

Further, the decision as to what accommodations are "reasonable" rests with the employer. Plaintiff may not insist on a particular accommodation if another reasonable accommodation was offered. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 577 (7th Cir. 2001); *Emerson v. Northern States Power Co.*, 256 F.3d 506, 515 (7th Cir. 2001) (*citing Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir.1996)); *Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 486 (7th Cir. 1997).

Here, Plaintiff was offered schedule changes, the opportunity to bring water into her class, and at the Board's expense, a voice amplification system that should have allowed her, using proper teaching methods suggested by Barillas, to provide sufficient instruction without straining her voice.

### b) Plaintiff still could not do the essential functions of her job after reasonable accommodations

Plaintiff carries the burden of presenting evidence that a reasonable accommodation existed that would have enabled her to perform the essential functions of her job. *Mays v. Principi*, 301 F.3d 866, 871 (7th Cir. 2002). An employer is only required to accommodate an employee if the reasonable accommodation would permit the employee to perform essential job functions. *Gile v. United Airlines, Inc., 213 F.3d 365, 372* (7th Cir. 2000). The protections of the ADA extend only to "qualified individuals" with a disability. *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). When determining whether a person is a "qualified individual" under the ADA, courts undertake a two-part inquiry and consider whether, at the time of the employment action, the employee: 1) satisfies the employer's legitimate selection criterion for

the job; and 2) is capable of performing the job's "essential functions" with or without reasonable accommodation from an employer. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974 (7th Cir. 2000). Put differently, the ADA is designed to prevent discrimination against disabled persons who are otherwise qualified for a job, but as a result of a disability are unable perform the job's essential functions without reasonable accommodations. 29 C.F.R. Part 1630 Appendix § 1630.9; *see also Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195 (7th Cir. 1997). However, the ADA does not shelter disabled individuals from adverse employment actions if the individual, *for reasons unrelated to his disability* (such as a poor work ethic, carelessness, bad attitude, insubordination or unprofessional demeanor), is not qualified for the job or is unable to perform the job's essential functions or fulfill the requirements of the position as prescribed by the employer or "fails to meet his employer's expectations." *Williams v. United Ins. Co. of America*, 253 F.3d 280, 282 (7th Cir. 2001); *Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001).

Plaintiff failed to present any testimony to the jury that would allow any reasonable jury to conclude that Plaintiff was able to do the essential elements of her job, including classroom management, either with or without the reasonable accommodations made by the Board.

Barillas testified that Plaintiff was unable to control her students, either before or after the voice amplifier was provided and her schedule was adjusted, and that other teachers developed techniques for maintaining discipline without yelling and screaming. Plaintiff was unwilling or unable to incorporate Barillas' suggestions, and her class control continued to be barely acceptable. Plaintiff is unable to present a question of fact for the jury as she cannot show that she was able to maintain classroom management or discipline either with or without the reasonable accommodations offered by the Board, and the Board is entitled to judgment as a

matter of law on Plaintiff's ADA discrimination claims. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005).

### c) Plaintiff's demand for a paid helper was an unreasonable accommodation request

Plaintiff testified that she made a request or demand for a paid parent helper after rejecting several proposals offered by Barillas. Plaintiff has admitted that she wanted the helper, an untrained, unlicensed parent, paid by the Board, to help her watch and control the students. Barillas testified that other situations in which parent helpers had been provided involved the teacher whose eyesight had been lost and needed assistance in getting around, or the art teacher and librarian, who used aides only for very ministerial tasks, and not for supervision of any students. Plaintiff's stated purpose in her request was inappropriate, as she clearly intended to use an untrained person to do the essential elements of her job.

Michael Rowder testified that although she felt it was unnecessary to do so, she attempted to arrange for a paid parent helper for Plaintiff. Rowder's superiors, the Board's ADA Steering Committee overruled Rowder, finding that the Board had sufficiently complied with it's duty to accommodate Plaintiff by adjusting her schedule and buying her the amplification equipment. Rowder's perception that the request could have been reasonable was rendered moot, as Barillas could find nobody interested in taking the position.

### 1. The Board Actively Engaged Plaintiff In Forming Accommodations

As part of the reasonable accommodation duty, the ADA requires employers to engage in an interactive process with disabled employees needing accommodation so that together they can identify the employee's needs and discuss accommodation options. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998). However, an employer's failure to engage in the

interactive process or causing the process to breakdown by itself is insufficient to support employer liability. *Rehling v. City of Chicago,* 207 F.3d 1009, 1015-16(7th Cir. 2000). Rather, the employee first must show that the breakdown of the interactive process led to the employer's failure to provide a reasonable accommodation. *Id.* at 1016.

The Board did engage in the interactive process. In February 1998, plaintiff requested a reasonable accommodation based on her medical condition involving her vocal cords. Between March 1998 and September 1998, Michael Rowder exchanged correspondence with plaintiff's doctor to determine plaintiff's medical condition. In September 1998, the Board granted plaintiff's request for a reasonable accommodation by providing a lapel microphone and speakers, and by scheduling one 40 minute break for plaintiff during the school day. During the following school year, plaintiff's teaching schedule was revised to include a fifth class Monday through Thursday, and the accommodation of one 30 minute break, one 40 minute break, and one 45 minute break Monday through Thursday along with the previous accommodations. Plaintiff's schedule for Friday was to teach one fifteen minute class and three forty-five minute classes and included one 25 minute break, one 30 minute break and one 45 minute break.

On January 2, 2000, Plaintiff also requested that her fifth period classes be combined with her fourth period classes, so she would only have to teach four classes a day. On January 6, 2000, Rowder informed plaintiff that combining her fourth and fifth period classes was not feasible, as one purpose of exploratory classes was to give preparation periods to other teachers. The Board offered plaintiff another reasonable accommodation, the opportunity to stop teaching her fifth class of the day and instead monitor the detention room. Plaintiff was further offered the accommodation of not being required to meet with parents of students assigned to the detention room. Plaintiff rejected these accommodations. Under the ADA, an employer is to

make reasonable accommodations only if accommodation would permit the disabled employee to perform her job, and an employer need not grant a disabled employee's request for an accommodation that would be an "inefficacious change." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 372 (7th Cir. 2000). Additionally, courts have held that it is unreasonable for another employee to perform the essential functions of the employee requesting the accommodation. *Peters v. City of Mauston*, 311 F.3d 835, 845-46 (7th Cir. 2002). An employer need not create a new job or provide a helper as an accommodation to a disabled employee. *Hansen v. Henderson*, 233 F.3d 521, 523-24 (7th Cir. 2000). Therefore, plaintiff's request for a paid parent helper was not a reasonable accommodation.

### C. A Directed Verdict For The Board Is Appropriate On Plaintiff's Disparate Treatment Claim

#### 1. Plaintiff cannot show a prima facie case sufficient to go to the jury

To present a *prima facie* case of disparate treatment to a jury, a plaintiff must offer evidence that: 1) she is disabled within the meaning of the ADA; 2) she was meeting her employer's legitimate employment expectations; 3) she was subject to an adverse employment action; and 4) similarly situated employees received more favorable treatment. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005).

To prove membership in the ADA's protected class, and therefore establish the first element of the *prima facie* case of disparate treatment, plaintiff must establish: 1) a disability; 2) the ability to perform the essential functions of the employment position; and 3) if unable to perform the essential functions without accommodation, the existence of a reasonable accommodation that would allow performance of the position's essential functions. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001). The Board does not contest that plaintiff suffered from a medical condition for purposes of this motion, however, for the reasons stated

above, plaintiff cannot establish that she was able to perform the essential functions of the position with or without reasonable accommodation. Therefore, plaintiff cannot establish the first element of a *prima facie* case of disparate treatment.

If, however, the court finds plaintiff was a qualified individual with a disability, the Board should still prevail. Plaintiff cannot establish the second element, that she was meeting the legitimate business expectations of her employer at the time her request for a paid parent helper was denied. It is undisputed that Barillas told plaintiff that she had poor classroom management and it resulted from her failure to engage the students in the group guidance class lessons. In fact, Barillas indicated on her June 13, 2001 teacher evaluation review for the 2000-2001 school year that plaintiff needed to work on more appropriate teaching strategies, improve her classroom control and discipline in the classroom. When Barillas found out that plaintiff was showing video tapes to her students over and over, he instructed her to engage her students in group projects and discussions regarding the subject matter being presented. Barillas also had to direct plaintiff to stop sending large numbers of students out of her classroom, but instead first address student discipline in her classroom. Therefore, plaintiff was not meeting the legitimate business expectations of her employer because she failed to improve her classroom management.

Plaintiff also cannot establish the third element of a *prima facie* case, as she did not suffer an adverse employment action. An adverse employment action includes "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Although, adverse employment actions may extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Here, Plaintiff claims that Barillas denied her request for

a paid parent helper, that Barillas denied her request for assistance with student discipline by instructing the school security not to assist her and denied her grievance regarding classroom security. Contrary to plaintiff's claims, none of these actions are adverse employment actions. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

1. **Plaintiff Cannot Show That The Board's Reasons For Its Actions Were Pretextual**

Should this court consider Plaintiff to have made a sufficient showing of a *prima facie* case to the jury, Plaintiff still cannot rebut, or show pretext behind the legitimate reasons that the Board offered for not giving Plaintiff further accommodations.

A plaintiff may attempt to prove that defendant's proffered non discriminatory reason is pretext by showing that a discriminatory reason more likely than not motivated the employer, or that the employer's proffered explanation is unworthy of credence. *Richter v. Hook-SupeRx*, 142 F.3d 1024, 1030 (7th Cir. 1998) (citing *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994). To achieve this, a plaintiff must identify "such weaknesses, implausibility's, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence. . ." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). However, if defendant believed the reasons given, then plaintiff loses even if the reasons are foolish, baseless, or trivial. *Id.* The fact that an employment decision was mistaken, ill-considered or foolish does not amount to a pretext for illegal discrimination so long as the employer honestly believed the reasons for the employment action. *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002). For purposes of establishing pretext, the honesty of the employer's explanation for the disputed employment is the issue for the court. *Id.* It is not the role of the court to sit as a "superpersonnel department that reexamines an entity's business decisions and

reviews the propriety of the decision." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000), *citing Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999).

Although plaintiff was previously provided a lapel microphone and speakers and a modified teaching schedule, she insisted that she now needed assistance in the classroom to maintain classroom discipline. Barillas informed plaintiff that the use of paid parent helpers to discipline students was improper. Plaintiff was denied a paid parent helper for her class as it was not proper for a paid parent helper to become the disciplinarian for Plaintiff's group guidance classes.

Plaintiff's group guidance class was part of the exploratory program at TMMS, and included classes in art, music, gym, computers and library. Although two teachers in her program had assistance from paid parent helpers, the circumstances were quite different. They were not seeking a second adult in the classroom to handle disruptive students. The art teacher's paid parent helper was assigned to assist the teacher in preparing art materials (such as balls of clay, or cutting paper) for the more than 600 students the art teacher had each week in her classes during the 2001-2002 school year. The librarian's paid parent helper was assigned to assist the teacher in re-shelving books and library materials, while the library teacher taught the classes. Thus, there is no evidence in this trial record that Barillas' reason for denying plaintiff a paid parent helper was pretext for discrimination. *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002).

D. **Plaintiff Cannot Prevail On The Constructive Discharge Claim.**

Plaintiff claims she was constructively discharged in violation of the ADA. To prevail on a claim for constructive discharge, plaintiff must show that a hostile work environment existed and that the abusive working environment became so intolerable that her resignation qualified as

a fitting response. *Rooney v. Koch Air, LLC.*, 410 F.3d 376, 382-83 (7th Cir. 2005). "A hostile work environment exists where an employee experiences harassment that is so 'severe or pervasive as to alter the terms and conditions of employment and create an abusive working environment.'" *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). Additionally, plaintiff must show that the harassment resulting in her constructive discharge was motivated by her disability. *Rooney*, 410 F.3d at 383.

Plaintiff admitted that the principal identified ways in which she could improve her classroom management, but that she disregarded Barillas' suggestions. Plaintiff testified that she informed Barillas at the beginning of April 2002, that she was going to retire at the end of the 2001-2002 school year. Plaintiff submitted her written resignation to the Board on April 9, 2002, indicating that the reason for her resignation was retirement, and that her resignation was to take effect on June 29, 2002, the last day of school. The significance of this date is that plaintiff worked at TMMS for an additional two and one half months before her resignation took effect. Such facts do not support a claim for constructive discharge. Additionally, plaintiff's evidence of a hostile work environment consists of: 1) being denied a paid parent helper; 2) being denied assistance from principal and school security personnel; 3) having a grievance denied. This falls far short of establishing a hostile work environment. As addressed above, the Board had legitimate reasons for denying Plaintiff a paid parent helper, insisting that Plaintiff, as her job mandated, take control of her own students and refusing to let her push her responsibilities for discipline onto others. There are no facts for a jury to consider Plaintiff's situation to have been so hostile that a reasonable employee would be forced to quit, yet stay until the end of the school year. *Rooney*, 410 F.3d at 383.

## III. CONCLUSION

For the foregoing reasons, judgment as a matter of law should be entered in favor of Defendant Chicago Board of Education.

                                                                Respectfully submitted,

                                                                PATRICK J. ROCKS
                                                                General Counsel

                    By:     s/Kristin A. Lion
                             KRISTIN A. LION
                             Assistant General Counsel
                             Chicago Board of Education - Law Department
                             125 South Clark Street, Suite 700
                             Chicago, Illinois 60603
                             (773) 553-1700

Susan M. O'Keefe, Associate General Counsel-Litigation