**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROSALYN L. OLIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 370 |
| | ) |
| BOARD OF EDUCATION OF THE | ) Judge Rebecca R. Pallmeyer |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosalyn Olian worked as a counselor and, later, as a teacher at Thurgood Marshall Middle School ("Thurgood Marshall") in Chicago, Illinois, from 1993 until 2002. Thurgood Marshall is run by Defendant, the Board of Education of the City of Chicago (the "Board"). Plaintiff suffers from a disability caused by aggressive radiation therapy she endured in the 1960s to treat lymphoma, and as a result, her breathing and speaking systems are substantially impaired. This disability makes it difficult for Plaintiff to teach five classes a day, as the course load put a major strain on her voice. Partly as a result of the physical strain teaching placed upon her voice, her classes became unruly and she was subjected to several relatively minor physical assaults in her classroom. Plaintiff resigned on June 28, 2002, and shortly thereafter filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Board violated her rights under the Americans with Disabilities Act ("ADA"). Plaintiff ultimately sued the Board and, after a week-long trial in June 2008, a jury returned a verdict in favor of Plaintiff on the claim that the Board failed to provide her with a reasonable accommodation and awarded compensatory damages in the amount of $244,000.

Both parties now seek alterations to the final judgment. Defendant seeks judgment as a matter of law or, in the alternative, remittitur of the jury award or a new trial on damages. Plaintiff seeks equitable relief on two additional ADA counts that were not tried to the jury and entry of a

permanent injunction. For the reasons that follow, all the motions are denied.

## FACTS[1]

Plaintiff Rosalyn Olian began working in the Chicago Public Schools in 1992. (Tr. 412:18-20.) Olian received a B.A. in English literature from the University of Chicago, earned her teacher's certification at Northwestern University, and earned a master's degree in counseling from Boston University. (Tr. 410:23-411:6.) In 1993, Olian became the counselor at Thurgood Marshall, a middle school in a working-class neighborhood on the northwest side of Chicago. (Tr. 414:8-12.) In her role as counselor, Olian helped students in one-on-one counseling sessions, administered standardized tests, and performed other tasks required by the position. (Tr. 414:19-415:10.)

Plaintiff remained in her counseling position at Thurgood Marshall until 1998, when Principal Jose Barillas notified her that she would need to start teaching a class called "Guidance." (Tr. 421:13-22.) The class, which was intended to teach the students life skills such as job skills and the importance of avoiding gangs and drugs, had not previously been taught at the school, and Olian was responsible for developing the curriculum in addition to teaching the class. (Tr. 424:8-427:5.) Plaintiff objected to teaching, as she had applied to be a counselor and was content in that role. (Tr. 423:8-13.) The school needed a teacher for the Guidance course, however, and Plaintiff began teaching four classes a day for the last three months of the 1997-98 school year. (Tr. 423:23-424:1.)

Before the 1998-99 school year began, Plaintiff learned that she would be required to teach five classes per day, instead of four. (Tr. 424:2-4.) Plaintiff's disability[2] prevented her from being able to speak comfortably for extended periods of time, the result of radiation therapy she received

---

[1] The facts are drawn exclusively from the trial transcript and from exhibits introduced at trial.

[2] The parties agreed in a stipulation before trial that Olian's condition qualified as a disability under the ADA. (PX01, Ex. 1 to App. to Pl.'s Rule 52 Mot.)

in the 1960s to treat lymphoma. (Tr. 420:2-15.) She objected to teaching the fifth class, and informed Barillas that her doctor had warned that a fifth class would place too much strain on her voice. (Tr. 435:10-12.) Plaintiff was then assigned to teach four classes per day for the 1998-99 school year, and the fifth period was changed to a preparation period. (Tr. 544:21-23.) In addition, the Board secured, through the assistance of ADA Administrator Michael Rowder, a microphone and speaker system for Plaintiff to use in class. (Tr. 250:22-251:22.) The speaker system broke within weeks of the start of the 1998 school year, however, and despite Plaintiff's repeated requests, the sound system was never fixed or replaced that year or any subsequent year. (Tr. 436:21-23.)

For the 1999-2000 year, Plaintiff's teaching responsibilities increased to five classes from Monday through Thursday, and usually four classes on Fridays. (Tr. 590:15-18; 256:6-8.) Plaintiff was unhappy about this assignment, and, particularly since she still did not have a working microphone, she thought the arrangement put too much of a strain on her voice. In January 2000, Plaintiff proposed to Ms. Rowder that she be allowed to combine two of her classes into one so that she would only have to teach four periods per day. (Tr. 276:22-277:3.) Rowder spoke to Barillas about the feasibility of combining two Guidance classes, but Barillas concluded the proposal did not meet the logistical needs of the school. (Tr. 545:8-15.) Barillas then proposed that Olian monitor the detention room instead of teaching a fifth class. (JX 16 Memo, Ex. 21 to App. to Pl.'s Rule 52 Mot.) Olian believed that the detention room assignment would provide no respite for her voice because she would still be dealing with unruly students; she therefore refused the assignment. (Tr. 442:11-443:5.)

Instead, Plaintiff requested a parent helper in her classroom, a situation enjoyed by at least two other teachers at Thurgood Marshall. (Tr. 444:13-23.) Initially, Rowder was willing to allocate the necessary funds to accommodate this request, and Barillas was willing to pay half of the cost from his budget. The ADA Steering Committee ultimately decided, however, that a helper was not

3

an appropriate accommodation, and that the microphone and speaker system should instead be repaired or replaced. (Tr. 343:8-11, 347:25- 348:8; JX 22 Minutes of the ADA Steering Committee Meeting, Ex. 18 to App. to Pl.'s Rule 52 Mot.) At trial, the Board presented evidence that those teachers for whom helpers were provided needed assistance with specific logistical tasks; for example, the art teacher had a helper to monitor and help collect materials, especially the cutting supplies. (Tr. 294:18-295:13.) In the Committee's view, a helper was not necessary for Plaintiff, and replacing the speaker and microphone was adequate to satisfy the reasonable accommodation requirement of the ADA. (JX 22 Minutes of the ADA Steering Committee Meeting, Ex. 18 to App. to Pl.'s Rule 52 Mot.) Plaintiff's request was thus formally denied, but Rowder inexplicably failed to communicate this information to Plaintiff, and the speaker system was never replaced. (Tr. 354:17-25.) Plaintiff repeated her request for a parent helper in November 2001, but Barillas denied that request within a day. (PX 34 11/19/01 Request for Accommodation, Ex. 4 to App. to Pl.'s Rule 52 Mot.; JX 25 11/20/01 Memo, Ex. 5 to *id.*) Plaintiff filed a grievance with the teachers' union as a result of this denial, but her grievance was ultimately denied. (JX 33 4/9/02 Grievance Denial, Ex. 8 to App. to Pl.'s Rule 52 Mot.)

In the classroom, Plaintiff had difficulty maintaining control in her class, particularly after her course load increased to five classes. Plaintiff was assaulted with various objects thrown at her by students, although never with anything more dangerous than ordinary school supplies (the school had metal detectors at its entrances to prevent the students from introducing dangerous weapons to the school). (Tr. 457:5-258:9, 48:17-19.) The assaults became more frequent as time wore on, however, culminating in a period in the fall of 2001 where the police were called to Plaintiff's classroom four times in a four-month period. (Tr. 455:23-25.) One serious incident occurred when a student hurled a tightly wound ball of paper at her from a close distance, causing a bruise; the police were called in response to that incident and the offending student was arrested. (Tr. 457:5-19, 513:15-20.) Other teachers at Thurgood Marshall testified that they sometimes came into

Olian's classroom to help her maintain order.  (Tr. 306:16-308:22, 314:19-315:11.)

A number of less serious incidents occurred during this time as well, and Plaintiff frequently responded to such difficult students by sending them to the detention room for the remainder of the period.  (Tr. 448:20-22.)  The union contract in effect guaranteed all Chicago public school teachers the right to exclude disruptive students from their classrooms. (PX 02 Union Contract at 88, Ex. 3 to App. to Pl.'s Rule 52 Mot.)  Barillas came to believe, however, that Olian was not effectively managing the students while they remained in her class, and eventually told her to send students to his office rather than the detention room.  (JX 20 4/11/00 Memo, Ex. 15 to App. to Pl.'s Rule 52 Mot.)  Those students were sometimes returned to Olian's class in the same period in which they were removed, a situation that Olian claimed caused further problems in maintaining order.  (Tr. 616:11-13.)  One teacher testified that on some occasions, Barillas even ordered staff not to respond to Olian's calls for assistance with her students.  (Tr. 315:16-25.)

The evidence established that the deteriorating situation in Plaintiff's classroom took an emotional and physical toll on her.  Josephine Strauss, a friend of Plaintiff who used to accompany her on regular walks, testified that Plaintiff was "a totally different woman" who was no longer her usual upbeat self, but was rather very unhappy, even "destroyed."  (Tr. 230:7-8.)  Catherine Olian, Plaintiff's daughter, also testified that her mother was a "wreck" as she became increasingly upset, frequently crying during their regular telephone conversations.  (Tr. 192:11-21.)  Both also testified that Plaintiff sounded hoarse and was prone to frequent coughing fits.  (Tr. 192:19, 230:11-12.)  Plaintiff herself testified that her condition worsened to the point where she had trouble sleeping through some nights and would fill a wastebasket with tissues before morning.  (Tr. 465:1-7.)

During Olian's time at Thurgood Marshall, she received annual evaluations.  The evaluation forms allowed for teachers to be ranked in four categories: superior, excellent, satisfactory, and unsatisfactory.  (Tr. 329:19-21.)  Before 2002, every evaluation Plaintiff received, both as a counselor and as a teacher, rated her performance as "satisfactory."  (Tr. 492:3-11.)  As a teacher,

her forms also included comments that urged her to improve classroom management and discipline and to develop other teaching techniques. Her evaluation forms noted a concern that a large part of her classroom activity was devoted to showing educational films. (JX 02 Evaluations, Ex. 27 to App. to Pl.'s Rule 52 Mot.) Barillas also orally offered what he deemed to be constructive criticism of Plaintiff's classroom performance; Plaintiff denied that the offered criticism was of any practical use to her. (Tr. 497:10-498:4.) In the spring of 2002, Barillas evaluated Plaintiff's performance as "unsatisfactory" and issued an E-3 notice, which resulted in Plaintiff's being placed on a remediation plan and assigned a "consulting teacher" to advise her on methods for improving her teaching skills. (Tr. 565:4-24.) Shortly thereafter, Plaintiff resigned, effective as of the end of the school year. (Tr. 466:2-8.) The Board argued at trial that her resignation was motivated by a desire to avoid the remediation process, but Plaintiff testified that her resignation was actually the result of the continuing physical and emotional strain imposed by her teaching position. (Tr. 467:9-11, 469:4-6.)

On August 5, 2002, Plaintiff filed a charge of disability discrimination with the EEOC.[3] (Compl. ¶ 50.) On October 25, 2005, after the EEOC determined that conciliation would not be productive, the United States Department of Justice sent Plaintiff a "Notice of Right to Sue" letter, and Plaintiff initiated this action shortly thereafter. (*Id.* ¶ 53.) Plaintiff's complaint alleged three separate ADA violations: discrimination; retaliation; and interference, coercion, and/or intimidation. (*Id.* ¶¶ 56-60.) The court held a jury trial in June 2008. The latter two counts of the complaint do not allow for compensatory damages and were therefore not tried to the jury; the jury only heard evidence concerning Plaintiff's allegation that the Board discriminated against her in violation of her rights under the ADA. To prove that claim, Plaintiff presented three separate theories: first, that the Board failed to provide her with a reasonable accommodation; second, that the Board

---

[3]    ADA claims must be filed within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a). Plaintiff's claim dates back 300 days before August 5, 2002, and thus concerns the discriminatory treatment she received in late 2001 through the end of the 2002 school year.

effectively forced her to resign by creating a hostile environment; and third, that she was subjected to disparate treatment on account of her disability.

On June 16, 2008, the jury returned a unanimous verdict. Finding in favor of Plaintiff on the ADA discrimination count under the theory that the Board failed to provide Olian with a reasonable accommodation, the jury awarded her $244,000. (6/16/08 Minute Entry [173].) The jury found in favor of Defendant on Plaintiff's two other theories of ADA discrimination, however, finding that Plaintiff was not subject to disparate treatment on account of her disability and that she was not forced to resign on account of working in a hostile environment. (*Id.*)

Defendant moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, arguing that the evidence adduced at trial did not prove that the Board failed to accommodate Plaintiff's disability. Alternatively, Defendant seeks remittitur of the jury's $244,000 compensatory damages award, or a new trial solely on the issue of damages. Plaintiff moves for entry of judgment on Counts II and III of her complaint for retaliation and interference, coercion, and intimidation, both in violation of the ADA. These counts were not tried before the jury because Plaintiff is entitled to seek only equitable remedies (here, back pay damages and prejudgment interest totaling $505,165.39). Finally, Plaintiff also moves for entry of a permanent injunction to ensure the Board's compliance with the ADA. The court addresses each argument in turn.

## DISCUSSION

### I.    Defendant's Motion for Judgment as a Matter of Law

The Board first argues that Plaintiff did not establish a claim for a failure to accommodate and the Board is therefore entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.[4]  When deciding a motion for judgment notwithstanding the verdict, the court asks

---

[4]    The Board also argues that Plaintiff failed to show disparate treatment or constructive discharge under the ADA, but since the jury found in favor of Defendant on those claims and Plaintiff does not seek to disturb the verdict, the court disregards the Board's arguments.

"whether any rational jury could have found for" the defendant. *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1085 (7th Cir. 2005). This analysis requires viewing the evidence in the light most favorable to the non-moving party and disregarding "all evidence favorable to the moving party that the jury is not required to believe." *Tart v. Ill. Power Co.*, 366 F.3d 461, 472 (7th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The court will not reweigh the evidence or make credibility determinations. *Tart*, 366 F.3d at 472. Defendant contends that the evidence adduced at trial established that Plaintiff could not perform the essential functions of her job with or without a reasonable accommodation; that Defendant provided her with a reasonable accommodation; and that Defendant engaged in an interactive process with Plaintiff. With the above standards in mind, the court considers Defendant's arguments in turn.

### A.    Essential Functions

In order to recover under the ADA, an individual must be a "qualified individual with a disability," meaning that she must be "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ." 42 U.S.C. § 12111(8). The parties agree that Olian's condition constituted a disability, but the Board argues that Plaintiff did not prove at trial that she was capable of performing the essential functions of her job even with reasonable accommodations. Specifically, the Board contends that Olian was unable to handle the classroom management and discipline aspects of being a teacher with or without a reasonable accommodation.

The parties do not seriously dispute that classroom management is an essential function of being a teacher. Plaintiff contends, however, that control of seriously disruptive or riotous students, the kind that throw hard objects at teachers, falls beyond the purview of a teacher's essential tasks. Indeed, Plaintiff introduced into evidence the collective bargaining agreement which establishes the unconditional right of a teacher to "exclude from class a pupil who is causing serious disruption." (PX02: Union Contract at 88, Ex. 3 to App. to Pl.'s Rule 52 Mot.) There was

evidence presented at trial from which the jury could find that during the final months of Olian's tenure at Thurgood Marshall, Principal Barillas directed that disruptive students she had ordered out of the class no longer be sent to the detention room and were in fact often returned to her room that same period. Barillas claims that his decision was based on Plaintiff's practice of sending too many students out of her class, but the jury was entitled to believe that Olian would not have sent out as many students if she had been given a reasonable accommodation for her disability. The reasonableness of this position is further underscored by Plaintiff's repeated "satisfactory" evaluations; she was only evaluated as "unsatisfactory" after she was no longer permitted to send students out of the room to the detention room and after she had been teaching five periods a day, without a parent helper and without a working microphone. The jury could reasonably have concluded that her classroom discipline would have returned to the satisfactory levels of 1998-2001 if she had been provided a reasonable accommodation such as a parent helper, a working microphone, or a shorter class schedule.

### B.    Reasonable Accommodations

The Board next argues that it is entitled to judgment as a matter of law because it provided Plaintiff with reasonable accommodations. An employer is not required to provide a disabled employee with the accommodation the employee desires; rather, the employer has the "prerogative to choose a reasonable accommodation." *Hoffman v. Caterpillar*, 256 F.3d 568, 577 (7th Cir. 2001) (quoting *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000)). The Board claims that it offered reasonable accommodations to Plaintiff both when it provided her with the microphone and when it offered to allow her to supervise the detention room instead of teaching a fifth class. If either of these accommodations constituted a reasonable accommodation under the ADA, the Defendant would be entitled to judgment as a matter of law even if the accommodations were not necessarily the ones desired by Plaintiff. *See Hoffman*, 256 F.3d at 577. Nevertheless, the jury's conclusion as to whether the Board's offered accommodations were reasonable must be accepted

so long as it is rational. *See Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 601 (7th Cir. 1998) ("The reasonableness of a requested accommodation is a question of fact.").

The jury was justified in concluding that neither accommodation offered by the Board was reasonable. First, the microphone provided by the Board broke within a month of Plaintiff's receiving it. Plaintiff informed school officials of the problem, but she never received another working microphone for the duration of her employment. The jury quite understandably rejected the notion that this was a reasonable accommodation, as Plaintiff did not have a working microphone at all within the relevant time period (late 2001 through the end of the school year in 2002) and she had informed school officials that it was no longer working. Defendant also argues that offering to allow Plaintiff to supervise the detention room for a fifth period rather than teach a fifth class was a reasonable accommodation, but a jury could have reasonably rejected that argument as well. Olian testified that supervising the detention room would not provide a chance for her to rest her voice because that assignment would have required her to maintain an active presence supervising the most unruly students in the school. Given her frequent problems with such students in her own classroom, the jury was justified in concluding that this, too, was not a reasonable accommodation for her difficulty in teaching five classes.

Plaintiff presented various theories as to what could have constituted a reasonable accommodation. First, she requested a working microphone, which was not provided for the duration of her teaching activities at Thurgood Marshall. Next, she suggested, consistent with her doctor's orders, that she only teach four classes a day, but for a number of practical reasons Barillas decided this was not a possibility. Finally, Plaintiff asked repeatedly for a parent helper in her classroom. The Board argues that providing a parent helper would not have been "reasonable" because helpers, who were paid a nominal amount, are intended to provide specific logistical support and not to assist generally in ordinary classroom discipline. The ADA does not require an employer to provide a helper to assist a disabled person with "essential functions" of the disabled

person's job.  *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002).  The jury was not required to accept the Board's explanation of a parent helper's purpose, however, as Plaintiff introduced evidence that the parent helper assigned to assist the art teacher was there to maintain discipline and create a safe environment for the teacher and others.  The jury thus could have concluded that providing a parent helper was a reasonable accommodation.

In its verdict, the jury was not required to state which of these accommodations it thought was reasonable and would have allowed Plaintiff to perform her essential job functions.  In the court's opinion, the jury could have reasonably found that at least two of these proposed accommodations—a working microphone or a parent helper—would have constituted a reasonable accommodation that would have allowed Plaintiff to perform her job at a satisfactory level.  Therefore, the court must uphold the jury's determination that the Board failed to reasonably accommodate Plaintiff's disability.

### C.    Interactive Process

Finally, Defendant argues that the Board engaged in an interactive process with Plaintiff and therefore cannot be held liable under the ADA for a failure to reasonably accommodate her disability.  "If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process."  *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (citing *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)).  There is ample evidence in the record from which the jury could have concluded that the Board was responsible for the failure of the interactive process to make a reasonable accommodation.  In the spring of 2000, the ADA Steering Committee refused Olian's request for a parent helper.  ADA Administrator Rowder admitted, however, that she never informed Olian that her request had been denied.  When Olian later repeated her requests for a parent helper, her requests were denied or ignored.  (PX 26: April 2000 Olian Request for a Helper, App. 7 to Mem. in Opp'n [183]; PX 34 11/19/01 Request for Accommodation, Ex. 4 to App.

11

to Pl.'s Rule 52 Mot.)  Nor did the Board replace the microphone despite repeated requests. Defendant's argument ultimately rests on the belief that it was justified in not resuming a dialogue about accommodations because it had already provided "<u>some</u> reasonable accommodations to Plaintiff, simply not the one that Plaintiff was demanding."  (Reply [190] (emphasis in original).)  As explained above, however, the jury was justified in determining that the accommodations proposed by the Board were not reasonable.  Therefore, the Board's failure to reinitiate the interactive process after denying her request for a parent helper does not excuse it from liability for its failure to reasonably accommodate Plaintiff's disability.

Defendant has failed to demonstrate that the jury's verdict was unreasonable.  The Board's motion for judgment as a matter of law is therefore denied.

## II.    Defendant's Motion for Remittitur

The Board next argues that the jury award of $244,000 is excessive and the court should either remit to a lower amount or order a new trial on damages pursuant to Federal Rule of Civil Procedure 59.  The Seventh Amendment guarantees that the "jury has wide discretion in determining damages."  *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 756 (7th Cir. 2002) (quoting *Am. Nat'l Bank & Trust Co. v. Reg'l Transp. Auth.*, 125 F.3d 420, 437 (7th Cir. 1997)).  The court can nevertheless reduce a jury award if it concludes that the award is "monstrously excessive" or is otherwise not rationally connected to the evidence adduced at trial.  *Liu*, 302 F.3d at 756 (citing *DeBiasio v. Ill. Cent. R. R.*, 52 F.3d 678, 687 (7th Cir. 1995)).[5]  In making this determination, courts should also examine "whether the award is roughly comparable to awards made in similar cases." *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 713 (7th Cir. 2004) (citing *Lampley v. Onyx*

---

[5]      Although listed as separate factors, the Seventh Circuit has recognized that "the 'monstrously excessive' inquiry is a vague one that may simply be another way of asking whether there is a rational connection between the award and the evidence."  *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 713-14 (7th Cir. 2004) (quoting *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 n.13 (7th Cir. 1995)).

*Acceptance Corp.*, 340 F.3d 478, 483-84 (7th Cir. 2003)).

At trial, Plaintiff presented evidence of both emotional and physical damages that she suffered as a result of Defendant's actions. Testimony by Plaintiff's friend as well as her daughter chronicled the decline in Plaintiff's emotional well-being as the problems at Thurgood Marshall intensified. Josephine Strauss, a friend of Plaintiff, went so far as to say that Plaintiff became "just a totally different woman"; whereas before the problems at the school intensified Plaintiff was "bubbly and enthusiastic," she became "very agitated" and "was destroyed" by the problems she was experiencing at the school. (Tr. 229:5-230:8) Similarly, Catherine Olian, Plaintiff's daughter, testified that her mother, to whom she spoke several times a week, was "very stressed out and crying and upset" and "she didn't know if she was going to be able to continue teaching," which caused her to be "afraid that she was going to lose her job, which was her income." (Tr. 129:15-193:1.) For her part, Plaintiff testified that she was "just having sort of a breakdown" due to the stress, that she "didn't want to be with her friends," and that she "would come home and just be so depressed." (Tr. 464:7-14.)

Plaintiff also presented evidence of physical harm she suffered. Specifically, she produced ample evidence that her disability worsened as a result of the Board's failure to reasonably accommodate her. She testified to increased pain in her throat, and both Strauss and Catherine Olian corroborated that "physically she was just a different person" who was constantly "very hoarse" and "could hardly talk." (Tr. 192:14-193:2, 229:22-23.) In addition to this exacerbation of a preexisting disability, Dr. David Oyer, Plaintiff's primary care physician, also testified that Plaintiff was experiencing severe stress and "was getting chest pain every day she went to work."[6] (Oyer

---

[6]     Defendant argues that the witnesses did not provide evidence of injury to Plaintiff during the relevant time period from late 2001 to the end of the 2002 school year. Catherine Olian, however, specifically testified to her mother's state of mind during that time period. (Tr. 192:2-193:4.) In addition, Dr. Oyer's testimony included his observation in 2002 of Plaintiff's complaints of chest pain. (Oyer Dep. 16:4-11.) Evidence of Plaintiff's injuries prior to the relevant time period
(continued...)

Dep. 16:4-11.)

When evaluating this evidence now, the court bears in mind that while the jury returned a verdict in favor of Plaintiff on the charge that the Board failed to provide Olian with a reasonable accommodation for her disability, the jury also found in favor of Defendant on the hostile environment and disparate treatment claims. Yet none of the above-mentioned evidence is inconsistent with the jury's verdict in favor of the Board. Plaintiff's physical injuries are the direct result of the Board's failure to reasonably accommodate Olian's disability: the jury could have readily concluded that her vocal difficulties would have been mitigated if she had been provided with any of the accommodations that were discussed, including reducing her class load, providing a parent aide, or providing her with a functional microphone and speaker. Additionally, the evidence of Plaintiff's emotional injuries could also reasonably be understood as a consequence of the Board's failure to reasonably accommodate: the jury could reasonably have concluded that she would have maintained better classroom discipline with a reasonable accommodation of her disability and that her inability to maintain classroom discipline was the cause of much of her emotional distress. Although Plaintiff may have identified essentially the same injuries as the source of her recovery if she had been successful on her hostile environment and disparate treatment claims, the failure of those claims is not inconsistent with a finding that these injuries were caused by Defendant's failure to provide a reasonable accommodation.

Nor is Plaintiff's account of her injuries as a result of the failure to accommodate necessarily inconsistent with the verdict in favor of Defendant on the two other counts. The jury could have

---

[6](...continued)
still constitute circumstantial evidence from which the jury could have inferred that Plaintiff continued to suffer those injuries during the relevant time period, particularly as most of that evidence was merely corroborative of other evidence. For example, Strauss testified to Plaintiff's state of mind prior to the relevant time period, but this may still have influenced the jury's determination of how much weight to accord to Catherine Olian's testimony about her mother's state of mind during the relevant time period.

reasonably found that Plaintiff suffered these injuries solely as a result of the Board's failure to reasonably accommodate her disability; for example, the jury may have concluded that Plaintiff's disparate treatment claim failed due to the absence of a similarly situated person (Tr. 734:21-22), and that her hostile environment/constructive discharge claim failed because she did not prove that the Board's actions were so intolerable that they constituted an adverse employment action. (Tr. 736:6-9.) Either of these findings would have precluded finding in favor of Plaintiff on those claims, but would not disturb the award of damages on the failure to accommodate claim. Taking into account both the physical and emotional injuries suffered by Plaintiff, the court concludes that the jury's damages award was not inconsistent with the jury's verdict in favor of Defendant on the other two counts.

Having determined that a rational connection exists between the evidence produced at trial and the jury award, the court now considers whether the jury award is in line with awards in similar cases. Defendant cites a line of cases that limit recovery where the only injury to Plaintiff is emotional harm. *See, e.g.*, *David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003) (affirming remittitur of $100,000 award to $50,000 where Plaintiff suffered only "embarrassment, disappointment, inconvenience, and frustration"); *Fleming v. County of Kane*, 898 F.2d 553, 561 (7th Cir. 1990) (affirming remittitur of $120,000 award to $40,000 where award was only "compensation for emotional distress"); *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989) (affirming remittitur of $55,000 award to $15,000 "for essentially 'intangible' injuries"). These cases are of little help here, however, because Plaintiff suffered physical injury. In fact, she aggravated her preexisting disability, making a greater damages award appropriate. Additionally, the persuasive value of Defendant's cases is further diminished by the fact that most of the cases are older cases, and "the current value of those awards is considerably greater." *AIC Sec. Investigations*, 55 F.3d at 1286.

Plaintiff similarly cites a litany of cases of varying persuasive value. The case she cites that

is most similar to her own is *Tomao v. Abbott Labs., Inc.*, No. 04 C 3470, 2007 WL 2225905 (N.D. Ill. July 31, 2007). The plaintiff's employer in *Tomao* discriminated against her on the basis of her age and her disability (she suffered from lupus) when it denied her a promotion and then fired her in retaliation for her complaints about the discrimination. *Id.* at *3. The plaintiff received a $600,000 compensatory damage award from the jury, which was reduced to $300,000 to comply with the statutory cap for such awards. *Id.* at *13. The court declined to further reduce the award, however, noting testimony from plaintiff and her daughter of the depression the plaintiff suffered after her termination. Just as the Board's actions appeared to worsen Olian's disability, the court in *Tomao* also took into account that the defendant's actions seemed to worsen her disability, as plaintiff became "sick more often."[7] *Id.* Other discrimination cases show that the jury award for Olian is not a distant outlier. *See, e.g.*, *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 563 (7th Cir. 2006) (upholding $200,000 award where plaintiff only "lost self-esteem, gained weight, had problems sleeping, changed demeanor, and became nervous"); *Martyne v. Parkside Med. Servs.*, No. 97 C 8295, 2000 WL 748096, at *7 (upholding $302,000 award for emotional distress and plaintiff's "inability to work [which] was caused by defendant's failure to provide her with reasonable accommodation for her disability."). Although none of these cases is precisely on point with Plaintiff's facts, discrimination cases are often fact-specific and "an exact analogy is not necessary." *Farfaras*, 433 F.3d at 566; *see also id.* ("Awards in other cases provide a reference point that assists the court in assessing reasonableness; they do not establish a range beyond which awards are necessarily excessive." (quoting *Lampley*, 340 F.3d at 485)).

Plaintiff's award may be higher than those seen in similar cases, but it is not an extreme outlier, and the court notes that some cases with similar facts have resulted in even greater jury

---

[7] The court also noted that Tomao's termination caused her financial hardship, *id.* at *13, an issue not directly relevant in this case. Tomao also received a larger award ($300,000) than the jury provided to Olian ($244,000), so this distinguishing fact is of little importance.

awards upheld by the courts. Because the award in this case is not "monstrously excessive" and bears a rational relationship to the evidence presented at trial and accepted by the jury, the court denies Defendant's motion for remittitur.

### III.    Plaintiff's Motion for Entry of Judgment on Counts II and III

Turning now to Plaintiff's post-trial motions, the court first considers Plaintiff's motion for entry of judgment on Counts II and III. In her complaint, Plaintiff included counts for ADA retaliation and for interference, coercion, and intimidation under the ADA. 42 U.S.C. § 12203(a), (b). As those claims do not allow for recovery of compensatory damages, however, Plaintiff had no right to a jury determination of liability. *See Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 965 (7th Cir. 2004). Plaintiff therefore moves this court to make findings of fact and conclusions of law pursuant to Rule 52 and to enter judgment on Plaintiff's behalf pursuant to Rule 58. FED. R. CIV. P. 52(a)(1); 58(a). As a preliminary matter, the court declines to make new factual findings (with one exception noted below) and adopts the findings made by the jury. *See* FED. R. CIV. P. 52(a)(3). The court considers the two remaining counts in Plaintiff's complaint in light of these findings.

#### A.    Count II—ADA Retaliation

In Count II, Plaintiff contends that she was retaliated against for making a request for a reasonable accommodation. Plaintiff can show retaliation either through the direct method or the indirect method. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). A plaintiff can prove her case under the direct method by demonstrating (1) that she engaged in a statutorily protected activity; (2) that she suffered an adverse employment action; and (3) a causal connection between the two. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). To establish a *prima facie* case under the indirect method, a plaintiff must show (1) that she engaged in a statutorily protected activity; (2) that she was meeting her employer's legitimate expectations; (3) that she suffered a materially adverse employment action; and (4) that she was treated less favorably than a similar situated employee. *Hilt-Dyson*, 282 F.3d at 465. The court concludes that

Olian's claim fails under either method.

First, applying the direct method, the court will assume that Plaintiff's request for a reasonable accommodation and her subsequent grievance petition were both statutorily protected activities, and that her receipt of an E-3 "unsatisfactory" rating constituted an adverse employment action. Plaintiff cannot, however, meet her burden of showing a causal connection between these events. In her testimony, Plaintiff effectively conceded that she was encountering serious difficulties in the classroom controlling her students—difficulties she claims were caused or exacerbated by the failure of the Board to provide her with a reasonable accommodation. Indeed, based on the evidence introduced at trial, there was evidence that Plaintiff was not only ineffective at controlling the students in her class by the 2001-2002 school year, but that many of her teaching methods, such as showing numerous videos and often repeating lesson plans to seventh and eighth graders, were likewise ineffective. The court adds its own observation that Plaintiff had severe difficulty hearing the questions asked during her cross-examination, a circumstance that further calls into question Plaintiff's ability to effectively control, let alone instruct, a classroom full of middle school students. In short, Plaintiff has not met her burden under the direct method of proof because she has not called into question the Board's nonretaliatory explanation for her "unsatisfactory" E-3 rating. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 736 n.6 (7th Cir. 2008) ("[A]n employee's failure to cast doubt on an employer's nonretaliatory explanation will . . . doom a retaliation claim under the direct method.").

For essentially the same reasons, Plaintiff also fails to meet her burden under the indirect method of proof. As noted above, Plaintiff must show that she was meeting her employer's legitimate expectations when she was subjected to the materially adverse employment action. *See, e.g.*, *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004). In addition, a plaintiff proceeding under the indirect method must show that the employer's proffered reasons for the adverse action were pretextual. *Id.* at 561. For the reasons stated in the preceding paragraph,

however, it is clear that Plaintiff cannot establish either of these elements. First, she was not meeting her employer's legitimate expectations: she had insufficient control over her students and utilized ineffective teaching methods. At a minimum, the evidence supports a conclusion that her teaching was in fact deserving of her "unsatisfactory" rating. Contrary to Plaintiff's suggestion, this finding by the court is not inconsistent with the jury's verdict on the reasonable accommodation claim. The fact that the jury found Plaintiff *could* have satisfactorily performed her job with a reasonable accommodation does not contradict the court's finding that without the reasonable accommodation, Plaintiff was *not* performing her job to her employer's expectations. Thus, the inference that she was given an E-3 notice based on Barillas's desire to retaliate against her for filing a request for a reasonable accommodation is unsupported by the evidence.

The court finds in favor of Defendant on Count II for ADA retaliation.

## B.     Count III—ADA Interference, Coercion, and Intimidation

In Count III, Plaintiff asserts that the Board interfered with her exercise of her ADA rights, and intimidated her and coerced her into resigning because she asserted those rights. 42 U.S.C. § 12203(b). Section 12203(b) makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having . . . exercise[d] . . . any right granted or protected by [the ADA]." *Id.* Proof of such a claim requires a causal connection between the coercion, intimidation, or interference and the plaintiff's exercise of her ADA rights. Accordingly, the Seventh Circuit has held that the direct and indirect methods of showing retaliation are appropriate for claims under section 12203(b) as well. *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999).

Nothing in the record supports a claim for interference, coercion, or intimidation. First, and most fundamentally, the required causal elements that were lacking for Plaintiff's retaliation claim under section 12203(a) are still lacking here, as Plaintiff cannot effectively rebut the Board's rational explanation of the basis for her negative performance review. Additionally, Plaintiff fails to show how a claim that Plaintiff was coerced into resigning differs from the ADA discrimination theory in

Count I that Plaintiff was constructively discharged, a claim on which the jury found in favor of Defendant. The court agrees with that finding, and concludes that Plaintiff's decision to resign was not coerced by the Board based on her assertion of her rights under the ADA. Similarly, nothing in the record supports a finding that the Board intimidated Plaintiff for asserting those rights. Plaintiff claims that Barillas's decision to send disruptive students back to her class constituted intimidation. Regardless of the wisdom of Barillas's decision, there is simply no evidence to suggest that it was meant to intimidate or that there was any connection between Barillas's decision and Plaintiff's assertion of her ADA rights. The court concludes that although Barillas may have been motivated, at least in part, by frustration with Olian's inability to control her classroom without sending out students, she has not proven her claim for intimidation under section 12203(b).

Therefore, the court finds in favor of Defendants on Count III.

IV.     **Plaintiff's Motion for a Permanent Injunction**

Finally, Plaintiff has requested that the court enter a permanent injunction on the reasonable accommodation claim. Plaintiff requests an injunction requiring the Board to (1) enter into an interactive process when a disabled employee requests an accommodation, and (2) promptly notify employees who made an accommodation request when action is taken on the request. The court sees no need for such an order. Injunctions should not be issued where "the proscribed discriminatory practice has been terminated and there is little likelihood of recurrence." *Williams v. Gen. Foods Corp.*, 492 F.2d 399, 407 (7th Cir. 1974). Here, Plaintiff has presented no evidence that a recurrence is likely. In her unrebutted testimony at trial, Rowder testified that her failure to inform Olian of the denial of her reasonable accommodation request was a simple oversight. Furthermore, there is no evidence of any discriminatory intent, as Rowder initially approved providing Olian with a parent volunteer. Finally, injunctive relief is particularly inappropriate in this case, as Plaintiff no longer works for the Board and has no desire to return; as she is not a class representative, an injunction makes little sense, as it would have absolutely no effect on her

individually.  *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 864 (7th Cir. 2001).  There is simply nothing in the record that would support the issuance of a permanent injunction against the Board.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Remittitur or a New Trial on the Issue of Damages Under FRCP 59 [179] and Defendant's Motion for Judgment as a Matter of Law [182] are denied.  Plaintiff's Motion for a Permanent Injunction on Count I for ADA Discrimination for Failure to Accommodate [193] and Plaintiff's Motion for Judgment on Partial Findings on Counts II and III Pursuant to Rule 52 for Entry of Findings of Fact and Conclusions of Law, and Pursuant to Rule 58 for Entry of Judgment [191] are also denied.

ENTER:

Dated: February 12, 2009

_____
REBECCA R. PALLMEYER
United States District Judge