**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROSALYN OLIAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No: 06 C 370 |
| THE BOARD OF EDUCATION, CITY OF CHICAGO, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rosalyn Olian, a former teacher at Thurgood Marshall Middle School in Chicago, Illinois, suffers from a disability caused by aggressive radiation therapy she endured in the 1960s to treat her lymphoma. Olian's resulting speaking impairment made it difficult for her to teach her assigned five classes per day. After unsuccessfully seeking accommodations, Olian resigned and sued the Board of Education of the City of Chicago ("the Board") for violating the Americans with Disabilities Act ("ADA"). Following a week-long trial in June 2008, a jury returned a verdict in Olian's favor on her claim of failure to accommodate and awarded compensatory damages in the amount of $244,000. On two other ADA claims, the jury found in favor of the Board.[1]

Plaintiff petitions for an award of attorney's fees as a prevailing party under the ADA pursuant to 42 U.S.C. § 12205. For the reasons explained below, Plaintiff's petition is granted, and Plaintiff is awarded attorney's fees in the amount of $184,360.75.

---

[1] Olian's claims under the ADA for failure to accommodate, hostile environment, and disparate treatment claims were tried to the jury. She also brought claims for retaliation and coercion, which were simultaneously tried to the court. As the court explains, Olian prevailed on her failure to accommodate claim only.

**BACKGROUND**

The court has recounted the underlying facts earlier, *see Olian v. Board of Education of the City of Chicago*, 631 F.Supp.2d 953, 956-59 (N.D. Ill. 2009), and will provide only a summary here. Olian was initially employed as a guidance counselor at Chicago's Thurgood Marshall Middle School in 1993. She remained in that position for five years, until School Principal Jose Barillas assigned Olian, over her objection, to teach a class called "Guidance," aimed at discouraging seventh and eighth graders from getting involved with drugs and gangs. Olian's difficulty speaking and raising her voice[2] made it hard for her to control a classroom full of occasionally-rowdy adolescents, and the five classes per day that she was required to teach further strained her voice.

Olian sought several accommodations from the Board between 1998 and 2002. At the beginning of the 1998 school year, the Board's ADA Administrator, Michael Rowder, obtained a microphone and speaker system for Olian to use in class, but the system broke within a few weeks and was never repaired. Olian then asked if she could combine two of her five daily classes into one to reduce the demand on her voice, but the school denied this request for logistical reasons. Barillas proposed that Olian be reassigned to monitor the detention room in lieu of teaching a class, but Olian refused that reassignment because, she concluded, it would not accommodate her disability; monitoring the detention room would have still required her to supervise unruly students and overuse her voice.

Instead, Olian requested that a "parent helper" be assigned to her classroom to help maintain order, an arrangement that had been made available to other teachers at the school. The Board's ADA Steering Committee determined that although a speaker system was an appropriate accommodation, a parent helper was not, and therefore formally denied her request. For unexplained reasons, however, Ms. Rowder failed to communicate this information and never

---

[2] Before trial, the parties stipulated that Olian's condition qualified as a disability under the ADA.

replaced the speaker system. Olian's subsequent requests for accommodations and a grievance she filed with the teacher's union were summarily denied. She continued having difficulty controlling her class and was subjected to a few instances of minor physical abuse at the hands of students (for example, having school supplies thrown at her). There was evidence that the situation took an emotional and physical toll on Olian. She received an "unsatisfactory" performance rating on her teacher evaluation in 2002, due in part to the lack of control that she exercised in the classroom, and she resigned shortly thereafter. At trial in June 2008, Olian argued that the Board violated her rights under the ADA in three ways: (1) by failing to provide her with a reasonable accommodation; (2) by creating a hostile environment that resulted in her constructive discharge; and (3) by subjecting her to disparate treatment on account of her disability. The jury returned a verdict in favor of Olian on the failure-to-accommodate theory and awarded $244,000 in compensatory damages, but found for the Board on Olian's other ADA theories. This court denied Defendant's motion for remittitur, concluding that "Plaintiff's award may be higher than those seen in similar cases, but it is not an extreme outlier . . . and bears a rational relationship to the evidence presented at trial and accepted by the jury . . . ." *Id.* at 964. The court reached that conclusion despite Plaintiff's failure to prevail on her hostile environment or disparate treatment theories, and despite the court's own finding in favor of the Board on Olian's two remaining ADA claims for retaliation and interference (tried to the court, not to the jury, because they supported only equitable relief). *Id.* at 965-67.

The court now turns to Plaintiff's petition for attorney's fees pursuant to 42 U.S.C. § 12205. The parties have complied with the court's Local Rule 54.3 and have agreed that the lodestar award is $184,360.75, based on a reasonable hourly rate and the number of hours expended by of Plaintiff's counsel on this case. (Ex. 1 to Pl.'s Pet.) Olian seeks recovery of that amount. The Board argues that the court must reduce the lodestar figure by 40 percent based on discretionary

factors, such as Plaintiff's relative degree of success.

**DISCUSSION**

Having won a verdict in her favor on at least one of her statutory claims, Plaintiff Olian is a prevailing party under the ADA. A court, in its discretion, may allow a plaintiff who prevails on a claim under the ADA to recover reasonable attorney's fees, including litigation expenses and costs. 42 U.S.C. § 12205. The "most useful starting point for determining the amount of a reasonable fee" is the lodestar amount, that is, the figure that results from multiplying the number of hours expended by plaintiff's counsel by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The determination of the lodestar amount does not end the inquiry, however, because other considerations may militate in favor of adjusting the fee award upward or downward. *Id.* at 434. Among the additional elements that the court may consider is the crucial factor of "results obtained." *Id.* If a plaintiff has achieved only partial or limited success, the district court may reduce the fee award to reflect the degree of success obtained. *Id.* at 436-37. On the other hand, "[w]hen a plaintiff has obtained an excellent result, his attorney should recover a fully compensable fee (i.e., the modified lodestar amount), and the fee 'should not be reduced simply because the plaintiff failed to prevail on every contention of the lawsuit.'" *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 557 (7th Cir. 1999)(quoting *Hensley,* 461 U.S. at 435). Success is not measured only by the amount of damages that an individual plaintiff recovers, although that factor is "certainly relevant to the amount of attorney's fees to be awarded." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). A successful plaintiff also vindicates "important civil and constitutional rights that cannot be valued solely in monetary terms," and the court considers these social benefits, not necessarily reflected in the damages award, in assessing the plaintiff's success. *Id.*

Defendant here argues that the court should reduce the lodestar figure of $184,360.75 by 40% to account for what the Board characterizes as Plaintiff's limited success. In support of its position, Defendant first notes the gap between Plaintiff's initial settlement demand of $400,000 and

her ultimate recovery of $244,000. In cases that involve more than a nominal award, however, the Seventh Circuit has explicitly "rejected the notion that the fee award should be reduced because the damages were smaller than a plaintiff originally sought." *Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009); *See also Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999)("Donlen's argument that Sheehan's attorneys' fees should be reduced because Sheehan's damages were much smaller than she hoped is meritless. This court has repeatedly rejected the notion that the fees must be calculated proportionally to damages.") In this case, the Board never responded to Olian's settlement demand, and the value of Olian's claim was disputed throughout the trial. The court sees no reason to penalize Olian for taking an aggressive initial bargaining position, given that the Board's unresponsiveness implies its own inaccurate preliminary valuation of Olian's claims. Nor is the court persuaded by the Board's appeal to proportionality, a principle which has been roundly rejected by the courts of this Circuit. Comparing Olian's recovery to her initial demand or any other preliminary valuation of her claim is not a sound basis for determining her relative success in this case.

Next, Defendant seeks a reduction because Olian prevailed on only one of her five ADA claims. Defendant argues that the five claims "differed in scope" and that Olian prevailed only on the one claim that "addressed her personal, particular situation alone" rather than any claims that were indicative of "pervasive wrongdoing." (Def. Br. 6-7.) Again, the court disagrees. The argument that Olian's fee award should be reduced because she succeeded on only one of her several related claims is a request for the type of mechanical "claim-chopping" that *Hensley* expressly rejected. *Hensley*, 461 U.S. at 435, n. 11 (A mathematical approach comparing the total number of issues in the case with those prevailed upon "provides little aid in determining what is a reasonable fee in light of all the relevant factors."); *see also Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir. 1987). Defendant concedes that all of the claims pursued by Olian in this litigation "were derived from a common body of evidence" and involve a "common set of facts." (Def. Br. at

5

6-7.)[3] *Hensley* teaches that in cases that involve a common core set of facts, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* The evidence adduced in this case was simultaneously relevant to all of Olian's various ADA claims, and the amount of time Plaintiff's counsel spent on Olian's successful claim is not neatly distinguishable from time spent on unsuccessful claims. It is undisputed that the overall relief Olian obtained was substantial; the Board characterized Olian's recovery as "monstrously excessive," (Motion, D.C. 179, 1-2), and the court acknowledged that the verdict of $244,000 in compensatory damages is "higher than those seen in similar cases." *Olian*, 631 F.Supp.2d at 964, *cf. Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007)(award of $275,000 in damages is "hardly minimal.") Having argued that the award is excessive, the Board cannot now credibly contend that Olian's recovery is somehow nominal or insignificant.

Nor does the court agree with Defendant's characterization of Olian's successful claim as "personal" rather than "systematic." To be sure, Plaintiff sought redress for the Board's failure to comply with her own reasonable requests for accommodation. In that sense, the harm she suffered was personal. Plaintiff's initial request for accommodation may well have been resolved simply by replacing the microphone system in her classroom. *Olian*, 631 F.Supp.2d at 961-62. The Board's

---

[3] As is often the case in civil rights and employment litigation, Olian's several ADA claims were interrelated. In such instances, time spent pursuing an ultimately unsuccessful claim may be compensable if it also contributed to the success of other claims. *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). Olian's failure to accommodate claim was the heart of her case at trial, but the evidence she presented to support that central claim also related to her unsuccessful theories of hostile environment, disparate treatment, retaliation and interference. *Cf. Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000)(Title VII plaintiff who was unsuccessful on most of her claims was nonetheless entitled to full recovery of attorney's fees where she prevailed on her "core claim.")

failure to take this simple and inexpensive step over a four-year period, despite Olian's repeated protestations, arguably demonstrates a pervasive and systemic failure to take seriously the requirements imposed by the ADA. The individuals responsible for ADA compliance themselves neglected and failed to respond to Plaintiff's facially reasonable requests for accommodation–conduct that might be characterized, in Defendant's own language, as "pervasive wrongdoing." As both parties have pointed out, this is the first successful ADA case against the Board that either party can identify.[4] The court presumes the result here will move the Board to act promptly in response to future ADA accommodation requests. By encouraging this employer and others to respond to ADA requests swiftly and appropriately, Plaintiff's success does implicate widespread and systematic concerns.

This brings the court to Defendant's final argument: that the fee award should be reduced based on a "relative lack of public concern" advanced in this case. Arguments regarding the role of the public interest in the award of attorney's fees ordinarily arise when the primary relief the plaintiff sought at trial was non-monetary. *See, e.g., Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir. 1984). Defendant's argument that the lack of public policy concerns advanced by Plaintiff's claim must similarly mandate a reduction in the fee award finds little support in authority. The only case Defendant cites in support of this argument, *Spanish Action Committee of Chicago v. City of Chicago,* is easily distinguishable. 811 F.2d 1129, 1135 (7th Cir. 1987). In that Section 1983 case involving widespread police misconduct, the Seventh Circuit upheld a reduction in the fee award where counsel had unsuccessfully devoted "substantial time and resources both at trial and on

---

[4] The court is aware of at least one other such case that has survived summary judgment. *See Henricks v. Board of Educ. of the City of Chicago,* No. 04 C 8284, 2008 WL 4126733 (N.D. Ill. Sept. 4, 2008). The novelty and difficulty of the questions presented in a lawsuit are, of course, among the factors that the court considers in making a fee determination. *See Hensley,* 461 U.S. at 430 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)) In this case, although the legal questions were not truly novel, Plaintiff's counsel capably argued a challenging case. The difficulty and complexity of the case weighs againstr reductions to Olian's fee recovery.

7

appeal to establishing [plaintiff's] right to recover a significant amount of additional punitive damages." *Id*. In a situation in which the punitive damages claim was "driving the litigation," the plaintiff's failure to prevail on that issue was an appropriate factor in determining whether the number of hours expended by plaintiff's counsel on the case was reasonable. *Id*. The Seventh Circuit also reasoned that the plaintiff's action did not promote the public policies underlying the relevant laws because the suit followed a consent decree issued in a related class action that had mooted the plaintiff's claims for equitable relief. *Id.* As a result, *Spanish Action Committee* focused entirely on the individual plaintiff's tort damages. Because the effort to recover those damages was largely unsuccessful, the trial court was justified in reducing its award of attorney's fees. *Id*.

There was no prior class action or consent decree in place in the case before this court, and Plaintiff Olian's claim is a more traditional employment discrimination action, challenging an individual employer's violation of the individual employee's statutory rights. Her case shares the public purpose that is common to many employment discrimination actions of ensuring compliance with federal anti-discrimination laws. Olian sought and recovered substantial compensatory damages for violation of her rights under the ADA. The accommodation claim on which she unquestionably prevailed was central to her entire case and, in the court's view, her attorney devoted the majority of his time and resources at trial toward the pursuit of this successful claim. Having obtained substantial relief in the form of a relatively large damages verdict, Plaintiff is entitled to recover the full measure of her reasonable attorney's fees. The request for a reduction of the lodestar is denied.

## **CONCLUSION**

Plaintiff's petition for an award of attorney's fees [246] is granted. Plaintiff is awarded attorney's fees in the amount of $184,360.75 to be paid by Defendant.

ENTER:

Dated: March 22, 2010
_____
REBECCA R. PALLMEYER
United States District Judge